## Lunn *v.* Oslin.

### (*Nashville.* January 11, 1896.)

1. HOMESTEAD. *Widow's use of timber.*

   A widow may use timber upon premises assigned to her as homestead in such manner and to such extent as will enable her to enjoy the estate without serious and permanent injury to the remaindermen. (*Post, pp.* 33, 34.)

   Cases cited and approved: Owen *v.* Hyde, 6 Yer., 334; 5 Mason, 13; 63 N. W. Rep., 368.

2. CASE IN JUDGMENT.

   A widow is not guilty of waste who cuts and removes from premises assigned to her as homestead trees of small value, suitable for telegraph poles, and devotes the proceeds to making necessary repairs of buildings and fences, and also clears six acres for grass and grazing purposes, removing the useless timber of small value, and leaving four trees to the acre for mast and shade, it appearing that this operated as a betterment of the land, and that sufficient timber was left to supply the premises. (*Post, pp. 29–33.*)

---

FROM MARSHALL.

---

Appeal from Chancery Court of Marshall County. WALTER S. BEARDEN, Ch.

FUSSELL & WILKES and SWANSON & MARSHALL for Lunn.

W. W. WALKER for Oslin.

Lunn *v.* Oslin.

WILKES, J.    This is a bill to stay waste by a
remainderman against a tenant under the homestead
laws, and for an account for timber cut, etc.    The
Chancellor refused any decree upon account, and di-
vided the costs between the life tenant and remain-
derman.    He also enjoined the life tenant from cut-
ting some trees left in a pasture lot, but refused
any further relief.    The remainderman appealed, and
has assigned errors.    The cause was assigned to the
Court of Chancery Appeals, and has been heard by
that Court, which has found the facts and affirmed
the decree of the Chancellor, and the remainderman
has appealed to this Court.

The defendant is a widow, and the premises in-
volved were, many years ago, assigned to her as a
homestead, and complainant became the purchaser of
the reversion or remainder in the land, subject to
such homestead.    With her is joined, as a defend-
ant, her son-in-law, who also resides on the prem-
ises.    It appears that, in 1889, Mrs. Oslin caused
several trees to be cut on the premises, and was
proceeding to market them, when complainant ob-
jected, and threatened legal proceedings, which caused
her to cease further cutting, and to promise to cut
no more.    Some of the cedar trees which had been
cut were left on the ground.    In 1894, the son-in-
law, under direction of Mrs. Oslin, the homestead
tenant, worked up some of this fallen timber, and
cut some other trees, and worked them into market-
able shape in the form of telegraph poles and

squared timbers, and sold them on the market. The amount received from these sales was $82.60; the cost of cutting and marketing was $47.29, leaving a net balance of $35.31, embracing the cost of some rails and shingles used on the place. The entire amount realized was used in making repairs on the place, which were badly needed, and in paying taxes, which latter was replaced by other repairs. These repairs were on the fences, barns, and other out-houses, and were economically made.

In February, 1894, defendants girdled some trees to kill them, so as to prepare about six acres of the ground for grass and grazing purposes. The trees killed were blue and white poplar, small, and some wind shaken, and of small value, and comparatively useless for lumber. Some four mast trees to the acre were left for shade and mast. The Court of Chancery Appeals finds that this resulted in the benefit and betterment of the land, and that the repairs were beneficial and needed, and counterbalanced the value of the timber used, and that a sufficient amount of timber is left to supply the place. The Court of Chancery Appeals was of opinion that the case was controlled by the principles announced in *Owen* v. *Hyde,* 6 Yer., 334, which involved the right of the widow on premises allotted to her as dower, and that the two estates were alike in quality and extent of interest, and otherwise, and the rules there announced were as proper in homestead estates as in dower premises. In that

case, the dower interest consisted of one-third of 756 acres of land. The widow cut the timber from about 15 acres, and cleared it up for cultivation, although there was already sufficient land open for that purpose. The timber cut off was valuable, being worth $300 to $400, but enough was left for the purposes of the estate. The Court below charged the jury that, though there was a sufficient quantity of cleared land for the support of the dowager and family on the dower estate, yet, she might go on and clear land and cut timber in order to cultivate the land, provided she leave sufficient for the permanent use of the estate, and this was affirmed by the Supreme Court; and it was further stated that it was not a question whether cutting the timber was necessary as a means of support, but did it materially injure the property. If so, she would be liable for waste; but, if not, although it was not necessary for her support, and although it was done for profit, she would not be liable, that new land might be cleared to relieve that which was old and worn, provided sufficient timber was left for the property, and it was not injured. It was further said: "The great contention is, whether lasting damage has been done the inheritance, or its value depreciated;" and, again, "that only which does a lasting damage to the inheritance, and depreciates its value, is waste."

In *Loomis* v. *Wilbur*, 5 Mason, 13, it was adjudged not to be waste in a tenant for life to cut

timber trees in order to make necessary repairs, and selling such timber to procure boards for such repairs, if the estate was benefited thereby. See · 4 Kent's Com., 78, note *d*.

In *Disher* v. *Disher*, 63 N. W. Rep., 368, a very recent case from Nebraska, it was held that a life tenant may cut timber so as to fit the land for pasturage or cultivation, if he does not thereby damage the inheritance.

It is evident, from an examination of the authorities, that the decision of the Court as to what constitutes waste, and what is permissible use of timber, is largely dependent upon the locality of the property and the extent and value of the timber. Thus, as stated in *Owen* v. *Hyde*, 6 Yer., 340, the law must necessarily be varied in this country from the English doctrine. There timber is scarce, and forest trees are planted and raised for fuel and timber, and it is of too much value to permit its unnecessary destruction. Here, on the contrary, a benefit often results to the estate by clearing away the timber, and it would be absurd to apply the rigid principles of the English law to a state of things wholly variant from theirs. The same difference exists between different States of the Union, in some of which the careful husbanding of timber is a matter of prime importance, while in others the clearing away of the forests is not only necessary to the use, but highly beneficial to the land. From the nature and character of the es-

Lunn *v.* Oslin.

tates of dower and homestead, there must necessarily arise a difference between them and life estates created by deed or will, in which the extent to which timber may be used can be fixed by the terms of the deed or will. But dower and homestead estates are given to widows to furnish them a support and maintenance, and the law is zealous to guard their rights to a greater extent than other life tenants or those entitled in remainder; and this is specially so in homestead estates, where the lands are held for the benefit of minor children as well as of the widow. In both cases a liberal construction and application will be made, and such use will be sanctioned as will best afford that support and maintenance which is the primary object of the laws. While there must be no wanton, reckless destruction of timber to the injury of the remainderman, and no such extensive improvements and betterments made as will prejudice the value of the remainder, still the tenant in dower or homestead will be protected in the usual, necessary, and proper use of the premises, and of the timber upon it, and thus enable them to enjoy the estate cast on them by the law, but not to the serious and permanent injury of the remainderman.

We think the defendants in this case have been guilty of no waste nor reckless or improvident use of the timber on the premises, but, on the contrary, have so used the freehold as to enhance its value to the remainderman as well as themselves,

Lunn *v.* Oslin.

and none of the acts complained of and found by the Court of Chancery. Appeals constitute waste.

The decrees of the Chancellor and of the Court of Chancery Appeals are therefore affirmed, and the costs will be paid as therein directed.